HANNA LUMBER COMPANY, a corpora-
tion, Plaintiff in Error,

v.

John D. WILKINS, Patricia Anne Wilkins
and Hanna Hardware and Supply Compa-
ny, a corporation, Defendants in Error.

No. 42113.

Supreme Court of Oklahoma.

July 23, 1968.

Lee & Booth, By James M. Lee and Gary M. Jay, Tulsa, for plaintiff in error, intervenor H. L. Hale d/b/a Hale Plumbing Co.

William P. Huckin, Jr., Tulsa, for defendant in error, South Boulder Corp.

BERRY, Justice.

This is an appeal by intervenor from an adverse judgment decreeing priority of a mortgage over a mechanic's and materialman's lien.

The cause was submitted upon stipulations, from which findings of fact were made and judgment entered. The facts as found and determined by the trial court, briefly stated to expose the issue involved are:

John D. Gassett, commenced construction of a house upon a lot which he owned. Through his agent, separate contracts were made with several companies for labor and material in connection with various phases of construction. One such company was intervenor, whose contract provided, in substance, that for $1,946.00 intervenor would furnish all labor and materials in connection with the plumbing as required by plans and specifications. Intervenor commenced work August 14, 1962, and by September 25, 1962, had furnished labor and materials sufficient to complete "all of the rough-in plumbing." Costs of labor and material amounting to $973.00 was paid September 28, 1962, in accordance with the contract.

About October 20, 1962, Gassett discontinued construction due to health and financial complications. Negotiations were begun to sell the lot and partially constructed house to John D. Wilkins. Under this agreement Gassett paid all bills and accounts for labor and materials then due and owing.

To finance the venture Wilkins negotiated a loan from South Boulder Corporation. Prerequisite to making a loan, this lending agency required, and Wilkins furnished, affidavit that all bills for labor and materials were paid up to the time work stopped and title was taken from Gassett. The court found there were no unpaid bills due, either when Wilkins acquired title or at time of execution (November 15, 1962) or filing (November 26, 1962) the mortgage to secure the loan; that construction was completely shut down during negotiations for sale, and until after execution and filing of the mortgage. The court also found intervenor resumed work December 12, 1962, with knowledge that Wilkins had made arrangements with South Boulder Corporation to finance and resume construction of the house, and that the mortgage had been recorded.

The trial court entered a decree of foreclosure which, in part, found Wilkins was indebted to intervenor in the amount of $1,099.00, and intervenor had a mechanic's and materialman's lien on the house and lot, which was "subject, subordinate, junior and inferior" to the lien (mortgage) of South Boulder Corporation.

Intervenor's motion for new trial was overruled and this appeal was perfected. On appeal intervenor urges its lien attached when it initially furnished labor and material (August 14, 1962), and the trial court erred as a matter of law by holding the subsequent mortgage (November 26, 1962) created a mortgage lien upon the premises superior to the mechanic's and materialman's lien.

It is argued that erection of the building was one continuous project, and intervenor contracted initially for the entire plumbing *facilities*; that the first portion of the contract was completed and was paid for as agreed, and the house subsequently completed under the contract, so intervenor's lien attached from commencement of the contract.

Intervenor urges the stipulations can be construed in such a way as to support his position. We conclude, however, the judgment entered was based upon the findings of fact and not on the attempted stipulations. Intervenor has made no attempt to demonstrate wherein the findings of fact are not supported by the so-called

stipulations. We hold the trial court's findings are not against the clear weight of the evidence. Under these facts we are required to examine these findings to determine error at law.

Intervenor cites and relies upon Industrial Tile Company v. Home Federal Savings & Loan Ass'n of Tulsa, Okl., 331 P.2d 918. In that case we held:

"Under 42 O.S.1951 § 141 where the erection of a building is one continuous project, all liens for labor performed on and material furnished for such building have their priority dating from the commencement of the building, and are co-equal and superior to an encumbrance placed thereon subsequent to its commencement, during the course of its construction, and prior to the expiration of the lien filing period after its completion."

Intervenor also cites and relies upon American First Title and Trust Company v. Ewing, Okl., 403 P.2d 488, in which case we overruled prospectively the Industrial Tile case, supra.

These cases do not encompass the principal issue to be decided in the present case. We are concerned here with the continuity of a project once it has been commenced in order to preserve or defeat a mechanic's lien.

42 O.S.1961, § 141, in part, states:

"Any person who shall, under oral or written contract with the owner of any tract * * * perform labor, or furnish material for the erection * * * of any building * * * shall have a lien upon the whole of said tract * * *. Such liens shall be preferred to all other liens * * * subsequent to the commencement of such building, * * *."

Although the precise question in this case has not been before this Court, we have recognized that commencement of a building may be broken into units or parts, in respect to determining priorities between mortgages and mechanic's liens. Dickason-Goodman Lumber Co. v. Foresman, 120 Okl. 168, 251 P. 70.

In discussing this related topic in 1 ALR3d at page 837 § 10, this text states:

"It generally has been recognized that it is necessary that the work on the building be continuous from start to finish in order for mechanics' liens to accrue to all the claimants from the time the work on the building was commenced. Accordingly, where the work on the building was interrupted for too long a period, it has been held that the mechanics' liens accrue to the claimants only from the recommencement of the work on the building."

In examining cases cited and discussed under this quotation, wherein the lien was lost, we observe that generally a long period elapsed between the time work stopped and the project recommenced. We also observe that another factor is prominent, i.e. visible conduct and activities regarding the stoppage of the construction, which are sufficiently manifest to notify interested parties of changed circumstances surrounding the initial project.

Although the trial court made no specific finding in regard to certain aspects of the contract, the stipulations show when Gassett sold to Wilkins there was an understanding Wilkins was not obligated to continue the services under the prior separate contracts, but that if their prices were right that Wilkins would do so. Even though Wilkins did not continue under all construction contracts, he did contact intervenor to resume work. Intervenor argues this amounted to a ratification by Wilkins of the original contract, with the effect of preserving the lien from the beginning of the work. In view of the trial court's finding, we need not consider the effect upon our conclusion had ratification by Wilkins been accomplished and clearly shown.

Our conclusion is persuaded by the change in circumstances which were, or should have been obvious to intervenor as being sufficient to place it on notice of the requirements necessary to obtain refinancing of this project by a third party.

The contract originally entered between Gassett and intervenor and the first phase of work completed thereunder was paid in full. Subsequently a new owner took over the project, financed by money furnished by a new party. The facts are sufficient to show intervenor had knowledge of the change in ownership and the new financial arrangement. Both the evidence and the findings of the trial judge are contrary to the contention that the contract, although not completed as originally contemplated by Gassett and intervenor, should be treated as a continuous contract which would operate to preserve the mechanic's lien. The evidence establishes that the intent of Gassett, Wilkins and South Boulder Corporation was to terminate all liabilities and obligations and to begin anew. And, intervenor had notice and knowledge of this, or was in a position which made this apparent, and therefore is charged in this respect. We conclude that a new contract had been made between the parties when intervenor resumed work.

Herein the facts determined by the trial court show that Gassett after commencing construction sold to Wilkins; before committing itself to finance Wilkins in the project South Boulder Corporation required all work be stopped, all bills and obligations for labor and material be paid, and their mortgage from Wilkins be recorded before work was resumed. The trial court found these requirements were satisfied, and that intervenor knew Wilkins had made a new financial arrangement for resumption of construction prior to the time intervenor "commenced to resume its work."

Under these facts we conclude the trial court did not err in finding that construction was not one continuous project, since the work had completely stopped, and that intervenor resumed work with sufficient knowledge to render its lien inferior to that of South Boulder Corporation.

Judgment affirmed.

All Justices concur.